**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Timothy Chey, | Case No. 22-CV-1429 (KMM/DTS) |
| Plaintiff, | |
| v. | **ORDER** |
| Metropolitan Airports Commission, | |
| Defendant. | |

This matter is before the Court on the Metropolitan Airports Commission's ("MAC") Motion to Dismiss. [ECF No. 11.] In his Amended Complaint, Timothy Chey claims he suffered severe emotional distress after a car traveled next to the drop-off lane he was walking in at the Minneapolis-St. Paul International Airport. ("MSP"). Mr. Chey asserts seven causes of action against MAC stemming from this incident. MAC argues that the Court should dismiss the complaint for several reasons, including that Mr. Chey failed to plead plausible damages, that MAC enjoys statutory immunity from tort claims, and that several of the individual claims, such as fraud, negligent misrepresentation, and breach of implied contract, are inadequately pled as a matter of law. For the reasons stated below, the Court grants MAC's motion and dismisses this case with prejudice.

1

## I. Allegations in the Amended Complaint[1]

On June 13, 2021, Timothy Chey took a hotel shuttle to MSP. [Am. Compl., ECF 7 ¶ 20 & Ex. A.] At the time of the incident, hotel shuttles arrived at MSP Terminal 1 via a designated roadway that had one main traffic lane in the middle and two drop-off lanes, one on each side. [Am. Compl., Ex. A.] When it arrived at MSP, the shuttle carrying Mr. Chey pulled to a stop in the left-side drop-off lane, with the sidewalk and the entry way on the left side of the shuttle. [*Id.*] Mr. Chey alleges that MAC policy dictated this drop-off procedure. [Am. Compl. ¶ 15.] Because the exit door for passengers was on the right side of the shuttle, Mr. Chey had to step out onto the road, walk around the front of the shuttle, and then step onto the sidewalk to enter Terminal 1. [Am. Compl., Ex. A.]

When Mr. Chey's shuttle stopped, there were no other cars in either the traffic lane or the other drop-off lane. [*Id.*] A few passengers exited the shuttle before Mr. Chey, and they all walked around the front of the shuttle and toward the sidewalk. [*Id.* at 0:00-0:10.] Just before Mr. Chey disembarked, a black sedan pulled up about a car-length behind the passenger side of the shuttle. [*Id.* at 0:10 – 0:12.] As Mr. Chey exited the shuttle, the black sedan drove slowly in the main traffic lane, with brake lights clearly visible, and veered slightly to the right, away from Mr. Chey. [*Id.* at 0:11 – 0:13.] Mr. Chey did not visibly react to the sedan and turned left around the front of the shuttle. [*Id.* at 0:13 – 0:15.] Mr. Chey continued to walk down the sidewalk toward the terminal entrance, appearing both

---

[1] In Exhibit A to the Amended Complaint, Mr. Chey includes a link to a video of the incident that underlies his claims in this case. [Am. Compl., Ex. A, ECF 7 at 19.] As a result, neither the parties nor the Court have to speculate about what occurred when Mr. Chey disembarked from the hotel shuttle—the video captures it well.

unharmed and unfazed. [*Id.* at 0:17 – 0:22.] However, Mr. Chey's complaint alleges that the black sedan was "heading right towards him" and caused him to "fear[] for his life" and left him "so upset he shed tears later thinking about this incredible happenstance." [Am. Compl. ¶¶ 23, 25.]

After the incident, Mr. Chey alleges that he spoke to MAC's CEO Brian Ryks, who assured him that "immediate steps were being taken" and that "they would install security guards immediately." [*Id.* ¶¶ 28–29.] Afterwards, according to Mr. Chey, airport personnel "began calling and emailing" him and "asking him questions about where he was and who he was." [*Id.* ¶ 37.] He further alleges that on July 3, 2021, he received photos and videos from a Minneapolis resident showing passengers exiting a hotel shuttle as he had, demonstrating that nothing had changed in how MAC was routing such traffic. [*Id.* ¶41, Ex. B.]

Mr. Chey claims that he suffered "severe and catastrophic emotional distress" because of the event with the black sedan and the later conversations with MAC personnel. [*Id.* ¶ 44.] He brings seven claims, six of which sound in tort and one of which is for breach of an implied contract.

## II. Analysis

MAC raises several challenges to the claims in Mr. Chey's Amended Complaint. As explained below, the Court finds that MAC's statutory immunity precludes liability as to several of the tort claims, and further concludes that Mr. Chey fails to state a claim as to fraud, negligent misrepresentation, and breach of implied contract.

3

### A. Legal Standard for Motion to Dismiss[2]

For a plaintiff's complaint to withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the alleged facts in the complaint must "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint need not contain "detailed factual allegations," but Rule 8(a)(2) requires the complaint to allege facts showing that the claim is plausible. *Id.* A "pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). The Court grants "reasonable inferences in favor of the nonmoving party," *Lind v. Midland Funding, L.L.C.*, 688 F.3d 402, 405 (8th Cir. 2012) (citing *Crooks v. Lynch*, 557 F.3d 846, 848 (8th Cir. 2009). However, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *McAdams v. McCord*, 584 F.3d 1111, 1113 (8th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

### B. MAC's Statutory Immunity

Mr. Chey asserts six tort claims: fraud and deceit (Count 1), strict liability (Count 3), false advertising under the Minnesota False Statements in Advertising Act ("MFSAA", Count 4), negligence and gross negligence (Count 5), negligence per se (Count 6), and

---

[2] Mr. Chey is appearing *pro se*, and usually the pleading of *pro se* litigants are read liberally. *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004). However, Mr. Chey notes that he is a "consumer litigation attorney" and lists himself as a "Partner/Attorney at Law" in the signature block of his Complaint. [Am. Compl. ¶ 31; *id.* at 18.] Therefore, the Court holds Mr. Chey to the same standard as an attorney, and his Complaint and arguments are not entitled to any lenience. *See, e.g.*, *Friederichs v. Gorz*, 624 F. Supp. 2d 1058, 1063 n.5 (D. Minn. 2009) (acknowledging that the rule of liberal construction did not apply to *pro se* plaintiff's complaint because he was an attorney).

negligent misrepresentation (Count 7). Each of these claims except for fraud and deceit and negligent misrepresentation are precluded by MAC's statutory immunity.

### Minnesota's Statutory Immunity Framework

Public corporations in Minnesota are "generally liable for their torts." *Fawzy v. Flack*, No. C4-00-846, 2000 WL 1778307, at *1 (Minn. Ct. App. Nov. 21, 2000) (quoting Minn. Stat. §§ 466.01, subd. 1, .02, .03, subd. 6). However, public corporations are not liable for their torts regarding "[a]ny claim based upon the performance or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused." Minn. Stat. §§ 466.02, .03, subd. 6. This type of immunity, known as statutory immunity or discretionary immunity, protects "planning level conduct, which is the process of evaluating factors such as the financial, political, economic, and social effects of public policy." *Fawzy*, 2000 WL 1778307, at *1 (citing *Watson by Hanson v. Metro. Transit Comm'n*, 553 N.W.2d 406, 412–13 (Minn. 1996); *Holmquist v. State*, 425 N.W.2d 230, 232 (Minn. 1988)); *see also Unzen v. City of Duluth*, 683 N.W. 2d 875, 882 (Minn. Ct. App. 2004). In contrast, "operational-level" decisions, which involve the ordinary day-to-day business of the government, are not covered by this immunity. *Unzen*, 683 N.W. 2d at 882. Statutory immunity exists to prevent courts from second-guessing "certain policy-making activities that are legislative or executive in nature." *Nusbaum v. County of Blue Earth*, 422 N.W.2d 713, 718 (Minn. 1988). In *Wilson v. Ramacher*, the Minnesota Supreme Court explained that "services to the public cannot be effectively accomplished if performance of these services is chilled by concern for second-guessing by a tort litigant[.]" 352 N.W.2d 389, 393 (Minn. 1984).

The party invoking statutory immunity has the burden of establishing that it applies. *Doe v. Indep. Sch. Dist. 31*, Case No. 20-cv-226 (SRN/LIB), 2020 WL 4735503, at *10 (D. Minn. Aug. 14, 2020). As it is an affirmative defense, statutory immunity only supports a motion to dismiss if its is clearly applicable on the face of the complaint. *Id.* at *10. "To determine whether discretionary immunity applies, the courts must 'identify the precise government conduct being challenged.'" *Doe v. Indep. Sch. Dist. No. 2154*, No. A09-2235, 2010 WL 3545585, at *7 (Minn. Ct. App. Sept. 14, 2010) (quoting *Nusbaum*, 422 N.W. 2d at 722). A court considering application of statutory immunity must first identify the agency or government conduct at issue, and then determine whether that conduct is planning level, for which immunity applies, or operational level, for which it does not. *Parada v. Anoka County*, 555 F. Supp. 3d 663, 678–79 (D. Minn. 2021). Courts have found that conduct such as a city's adoption of policy for water-main and infrastructure maintenance, *Magnolia 8 Props., LLC v. City of Maple Plain*, 893 N.W. 2d 658, 665 (Minn. Ct. App. 2017), a decision to delay certain repairs for budgetary reasons, *Unzen*, 683 N.W. 2d at 882, and even staff hiring and retention, *Lopez v. Minn. Vikings Football Stadium, LLC*, Civ. No. 17-1179 (PAM/TNL), 2018 WL 626529, *2 (D. Minn. Jan. 30, 2018), are all discretionary, planning-level decisions for which immunity applies.

**Application to the Amended Complaint**

The allegations in the Amended Complaint clearly establish the applicability of statutory immunity to the strict liability, false advertising under the Minnesota False

Statements in Advertising Act,[3] negligence and gross negligence, and negligence per se tort claims asserted by Mr. Chey against MAC, and as a result, those claims are subject to dismissal.

As an initial matter, the Court notes that Mr. Chey did not respond in any way to the MAC's statutory immunity arguments in the memorandum he submitted in opposition to the motion to dismiss. Although he cited some authority related to the standard generally applicable to motions to dismiss, he cited no authority and offered no argument that immunity is inapplicable in this case. This failure alone would support the Court in granting dismissal on immunity grounds. *See, e.g.*, *Donelson v. Ameriprise Fin. Servs., Inc.*, 999 F.3d 1080, 1094 n.4 (8th Cir. 2021) ("[W]ithout argument or citation to legal authority, we deem this argument waived. . . ."); *Goe v. City of Mexico*, 217 Fed. App'x 583, 584 (8th Cir. 2007) ("Goe has waived any challenge he may have to the dismissal of his due process claim by failing to brief the issue."). But rather than relying solely on waiver, the Court also determines that immunity applies here on the merits of the argument.

MAC is a public corporation, Minn. Stat. § 473.603, and as such it is explicitly covered by the immunity statute at issue. *See Fawzy*, 2000 WL 1778307, at *1 ("MAC is a public corporation and may therefore assert statutory immunity."). Mr. Chey does not and cannot dispute this.

---

[3] The Minnesota False Statements in Advertising Act, Minn. Stat. §325F.67, is a statutory tort. Section 325F.67 is part of the Consumer Fraud Act statute, which the Minnesota Supreme Court has referred to as providing a tort claim. *Agre v. Rain & Hail LLC*, 196 F. Supp. 2d 905, 909–10 (D. Minn. 2002) (citing *Group Health Plan, Inc. v. Phillip Morris Inc.*, 621 N.W.2d 2, 7 (Minn. 2001)).

The first step in assessing application of statutory immunity is identifying the specific agency or government conduct at issue. From the face of the Amended Complaint, Mr. Chey complains about a MAC policy in June 2021 that required shuttle passengers to step onto a road before entering Terminal 1 at the MSP airport. [Am. Compl., ¶15.] At the time, hotel shuttles arriving at Terminal 1 were required to use a designated roadway which, in the relevant area, had one main traffic lane and two drop-off lanes, one on each side of the traffic lane. [Am. Compl., Ex. A.] Mr. Chey also complains of MAC's marketing of its facility as a safe place.

The second step in the immunity analysis is to determine whether the conduct at issue involves planning decisions or day-to-day operations; it is apparent that the decisions made by MAC that underlie the tort claims at issue above are planning decisions to which immunity applies. For instance, Mr. Chey refers to the "Travel Confidently MSP" program and cites statements from MAC's Chairman and CEO about promoting cooperation and coordination among many entities at the airport. [Am. Compl. ¶ 12, 13.] The Amended Complaint also attributes the drop-off risks he describes to a change in policy that occurred in December of 2020. [*Id.* ¶ 15.] And he complains of the "dangerous design" at Terminal 1 [*id.* ¶ 74], and of MAC's CEO and Chairman promising changes to the traffic pattern, but failing to do so. [*Id.* ¶ 47–51.] These are precisely the sort of policy and planning decisions that statutory immunity was designed to protect.

The Court's decision is strongly supported by the Minnesota Court of Appeals' decision in *Fawzy*. There, a person was struck by a vehicle and fatally injured while attempting to cross Glumack Road at MSP. 2000 WL 1778307, at *1. The plaintiff claimed

8

that MAC was negligent because it failed to place signs directing pedestrians to a pedestrian underpass under Glumack Drive after MAC eliminated the bus stop at a nearby post office. *Id.* at *2. The Court of Appeals held that the district court "correctly concluded that MAC's decision not to build a pedestrian walkway is a planning decision protected by statutory immunity." *Id.* The Court sees no meaningful difference between the decision challenged in *Fawzy* and the traffic-pattern design at issue in this case.

Because the Court finds that statutory immunity applies to MAC, generally, and to the specific actions and decisions at issue in the complaint, it grants MAC's motion to dismiss Mr. Chey's strict liability, false advertising under the Minnesota False Statements in Advertising Act, negligence and gross negligence, and negligence per se claims with prejudice.

### C. Fraud and Deceit

The Court next turns to Count 1, Mr. Chey's fraud claim. First, he alleges that MAC CEO Brian Ryks made false statements during a telephone call with him in June 2021. [Am. Compl. ¶ 49, 50, 51.] Second, he alleges that unidentified airport personnel interrogated him soon after he spoke to Ryks. [*Id.* ¶54.] To sustain a fraud claim, Chey must show: (1) that MAC made a false representation of a material fact; (2) MAC made the statement with knowledge of the falsity of the representation; (3) with the intention to induce Mr. Chey to act in reliance; (4) that the representation caused him to act in reliance on the misrepresentation; and (5) that he suffered pecuniary damages as a result of the reliance. *See Valspar Refinish Inc. v. Gaylord's, Inc.*, 764 N.W.2d 359, 368 (Minn. 2009). To adequately state a fraud claim, a plaintiff must comply with Fed. R. Civ. P. 9(b) which

9

requires him to plead with particularity "the who, what, where, when, and how of the alleged fraud." *Drobnak v. Andersen Corp.*, 561 F.3d 778, 783 (8th Cir. 2009) (internal quotations omitted). Both aspects of Mr. Chey's fraud claim fail to meet this standard.

### Alleged Statements by Ryks

With respect to the alleged statements by Mr. Ryks, Mr. Chey's Amended Complaint does not satisfy Rule 9(b)'s pleading requirements in several ways. Chey alleges that Ryks stated that "immediate steps were being taken" and that the MAC "would install security guards immediately." [Am. Compl. ¶ 29, 65.] "A representation or expectation as to future acts is not a sufficient basis to support an action for fraud merely because the represented act or event did not take place." *Valspar*, 764 N.W.2d at 368–69 (citation omitted). And "general and indefinite" statements are insufficient to establish a fraud claim. *Berstein v. Extendicare Health Servs., Inc.*, 607 F. Supp. 2d 1027, 1032 (D. Minn. 2009) ("[S]tatements Plaintiff identifies in her Complaint and Amended Complaint are so general and unspecific that they cannot serve as the basis for a claim under any of the consumer protection statutes upon which Plaintiff relies[.]").

Additionally, Mr. Chey fails to allege any facts showing or permitting the inference that Ryks intended him to act in reliance on his purported statements. Although he does not explicitly say so, Mr. Chey suggests that he delayed filing this lawsuit by a couple weeks in reliance on Ryks' statements. [Am. Compl. ¶ 50, 51.] But he does not clearly assert that Mr. Ryks made the statements to induce him to delay filing this lawsuit, and none of the facts alleged in the Amended Complaint suggest an intent to induce such a delay. Finally, nothing in the Amended Complaint suggests that Mr. Chey suffered

pecuniary damages as a result of any alleged delay in filing this suit because he relied on Mr. Ryks' alleged statements. Consequently, Mr. Chey's fraud claim based on statements made by Mr. Ryks fails to state a claim as a matter of law. *Evertz v. Aspen Med. Grp.*, 169 F. Supp. 2d 1027, 1031 (D. Minn. 2001) (finding that misrepresentation clam failed as a matter of law because the plaintiff did not "demonstrate that she acted in justifiable reliance on the representation and that she suffered damages as a proximate result of the representation.").

### Alleged Interrogations by Airport Staff

Mr. Chey's fraud claim also references interrogation by unidentified airport personnel, but these allegations also fail to meet Rule 9(b)'s heightened pleading requirements and otherwise fail to state a plausible claim. With respect to Rule 9(b), Mr. Chey does not identify specific false statements made to him during the alleged discussions. Instead, he states that the alleged interrogations consisted of "asking Plaintiff questions." [Am. Compl. ¶ 66.]

Additionally, Mr. Chey does not claim that the interrogation included any "representation[s] . . . of a past or existing material fact susceptible of knowledge." *Valspar*, 764 N.W.2d at 368. His vague assertion that the airport officials involved in questioning him "purposefully lied to him," [Am. Compl. ¶ 54], is also not enough. This allegation is entirely conclusory and too vague to state a viable fraud claim. *See Juster Steel v. Carlson Companies*, 366 N.W.2d 616, 619 (Minn. Ct. App. 1985) (dismissing fraud claim that vaguely referred "to the content of the misrepresentations").

Finally, Mr. Chey fails to state a plausible fraud claim based on the interrogations because he nowhere alleges facts indicating that any MAC representative intended him to rely on any statement made during the alleged interrogations. Nor does he allege that he detrimentally relied on any statement made by the representatives or suffered any pecuniary damages because of that reliance. Again, this aspect of Mr. Chey's fraud claim cannot survive MAC's motion to dismiss. Mr. Chey's claim for fraud and deceit is dismissed with prejudice.

### D. Negligent Misrepresentation

In Count 7, Mr. Chey alleges that MAC made negligent misrepresentations relating to the following subject areas: safety of the airport shuttles to a dangerous terminal; lack of safeguards in letting passengers off; failure to provide any personnel to direct traffic; and no lights or traffic stops or warnings to passengers. [Am. Compl. ¶ 96.] Negligent misrepresentation claims are subject to Rule 9(b)'s heightened pleading requirement. *Bergman v. Johnson & Johnson*, Civil No. 20-1693 (JRT/HB), 2021 WL 3604305, at *4 (D. Minn. Aug. 13, 2021). They also require the same elements of falsity and causation. *Aulick v. Skybridge Americas, Inc.*, 860 F.3d 613, 623 (8th Cir. 2017) (negligent misrepresentation claims require that defendant "supplies false information" and plaintiff's "justifiable reliance upon the information").

Mr. Chey's negligent misrepresentation claim fails in several respects. First, these allegations do not satisfy Rule 9(b)'s heightened pleading standard. Rather, the Amended Complaint includes four general subject areas in which MAC purportedly made misrepresentations or omissions. Mr. Chey does not identify specific false information that

12

was communicated. As a result, the Amended Complaint does not identify "the time, place, and content of [MAC's allegedly] false representations." *Bergman*, 2021 WL 3604305, at *4.

Perhaps more importantly, the Amended Complaint falls short on asserting facts that could support a plausible negligent misrepresentation claim. For one thing, Minnesota courts have indicated "that negligent misrepresentation is limited to commercial or business transactions resulting in pecuniary damages." *Bergman*, 2021 WL 3604305, at *4 (citing *Forslund v. Stryker Corp.*, Civil No. 09-2134 (JRT/JJK), 2010 WL 390584, at *6 (D. Minn. Sept. 30, 2010)). Nothing in the Amended Complaint suggests that Mr. Chey suffered any pecuniary damages because of any allegedly false statement concerning airport safety. In addition, there are no allegations showing that Mr. Chey justifiably relied on any false information supplied by MAC, nor any facts showing that MAC failed to exercise reasonable care in communicating the information. *See Aulick v. Skybride Ams. Inc.*, 869 F.3d 613, 623 (8th Cir. 2017) (providing elements of a negligent-misrepresentation claim).

For these reasons, the Court finds the Amended Complaint fails to state a claim for negligent misrepresentation, and Count 7 must be dismissed.

### E.  Breach of Implied Contract

All that remains is Mr. Chey's claim for breach of implied contract, Count 2 of the Amended Complaint. The Court concludes that Mr. Chey has failed, in two different respects, to state a claim as to this Count, and it should also be dismissed. Under Minnesota law, a party alleging an implied contract "must still prove all essential elements of [a]

contract." *Tri-State Bobcat, Inc. v. FINN Corp.*, 338 F. Supp. 3d 971, 982 (D. Minn. 2018) (citation omitted). A breach-of-contract claim in Minnesota has four elements: the formation of a contract, performance by the plaintiff of any conditions precedent, a material breach of the contract by the defendant, and damages. *See Mills v. Mayo* Clinic, Case No. 19-cv-2859 (SRN/ECW), 2021 WL 4134849, at *3 (D. Minn. Sept. 10, 2021) (*citing Gen. Mills Operations, LLC v. Five Star Custom Foods, Ltd.*, 703 F.3d 1104, 1107 (8th Cir. 2013)). Not all contracts must be expressly stated; "instead a contract 'may be implied in fact where the circumstances . . . clearly and unequivocally indicate the intention of the parties to enter into a contract.'" *Id.* at *3 (quoting *State Farm Mut. Auto Ins. Co. v. Merrill, Tr. for P.B.*, 353 F. Supp. 3d 385, 846 (D. Minn. 2018). For instance, in *Bergstedt, Wahlberg, Berquist Associates, Inc. v. Rothchild,* the Minnesota Supreme Court found there was sufficient evidence to support the existence of an implied contract where the parties worked closely for two years, and the defendant initiated contact with the plaintiff, accepted sketches, suggestions, and plans, and accepted the benefits of the plaintiff's services. 225 N.W.2d 261, 263 (Minn. 1975). In contrast, in *Roedler v. U.S. Department of Energy*, the court dismissed a breach-of-implied-contract claim on the ground that, even when viewed through the lens of Rule 12(b)(6), the plaintiff's complaint failed to allege that there was mutuality of intent to enter a contract and a lack of ambiguity. No. CIV.98-1843 (DWF/AJB), 1999 WL 1627346, at *9 (D. Minn. Dec. 23, 1999), *aff'd sub nom. Roedler v. Dep't of Energy*, 255 F.3d 1347 (Fed. Cir. 2001). Likewise, in *Mauer v. Union Pacific Railroad Co.*, a different court dismissed a breach-of-implied-contract claim because the plaintiff failed to allege objective manifestations of the parties' intent to form

14

a contract. No. 8:19-CV-410, 2020 WL 12443342, at *1, *6 (D. Neb. Aug. 17, 2020) (applying Nebraska law).

Here, Mr. Chey has failed to adequately allege mutuality of intent to contract. Count 2 simply states "[t]here was an implied contract between MSP airport and all passengers that there will [be] safety protocols – not just Covid – but all safety to all passengers," and restates Mr. Chey's version of the facts. [Am. Compl. ¶¶ 60–69.] But no facts are alleged or even hinted at that could support an inference that Mr. Chey and MAC agreed that such a contract encompassed not placing Mr. Chey within several feet of a slow-moving car that never hit him or even caused him to break his stride. His conclusory allegations are insufficient, without more, to establish mutuality of intent to contract or any sort of "tacit understanding." *Roedler*, 1999 WL 1627346, at *9. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Moreover, the Amended Complaint fails to allege plausible and recoverable damages for a breach-of-contact claim. Mr. Chey alleges only emotional distress damages, emotional distress for which he does not allege he sought medical care. Indeed, aside from his purported distress, there is no harm whatsoever that derives from this alleged breach of contract: he was delivered safely and on-time to the airport and suffered no injury along the way. He does not assert that any actual economic or physical harm resulted from the traffic pattern at MSP, nor that his emotional distress caused physical injury. As the Minnesota Supreme Court has explained, emotional distress damages are only recoverable for a breach of contract on the rare occasion when the breach is accompanied by

15

independent tortious conduct that is willful in nature. *Lickteig v. Alderson, Ondov, Leonard & Sween, P.A.*, 556 N.W.2d 558, 561 (Minn. 1996). In addition, the "accompanying independent tort must . . . support the extra-contractual damages in its own right." *Deli v. University of Minnesota*, 578 N.W.2d, 779, 782 (Minn. Ct. App. 1998) (describing the goal of preventing contract law from being swallowed by tort law). Here, none of the facts in the Amended Complaint establish a non-frivolous, independent tort claim based on willful contact that supports the recovery of extra-contractual damages in its own right. Accordingly, the Amended Complaint has failed to state a claim for breach of an implied contract.

### III. Order

For the reasons discussed above, **IT IS HEREBY ORDERED** that MAC's Motion to Dismiss [ECF No. 11] is **GRANTED** and this matter is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date: March 1, 2023

                                                *s/Katherine Menendez*
                                                **Katherine Menendez**
                                                **United States District Judge**